1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| ENRIQUE RUDY GOMEZ, | ) | 1:09-CV-00291 LJO SMS HC |
| | ) | |
| Petitioner, | ) | FINDINGS AND RECOMMENDATION |
| | ) | REGARDING PETITION FOR WRIT OF |
| v. | ) | HABEAS CORPUS |
| | ) | |
| R. E. BARNES, | ) | |
| | ) | |
| Respondent. | ) | |
| | ) | |

Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.

**PROCEDURAL BACKGROUND**

Petitioner is currently in the custody of the California Department of Corrections pursuant to a judgment of the Superior Court of California, County of Stanislaus, following his conviction by jury trial on January 12, 2006, of robbery (Cal. Penal Code § 211) and participating in a criminal street gang (Cal. Penal Code § 186.22). (LD[1] 1:93-94.)  Petitioner waived trial on a prior prison term allegation and the trial court found the allegation true on January 12, 2006. (LD 1: 148.) On February 2, 2006, Petitioner was sentenced to serve a total determinate term of sixteen years in state prison, as follows: five years on the robbery count, plus ten years for the gang enhancement, plus one

---

[1]"LD" refers to the documents lodged by Respondent with his response.

1   year for the prison prior. (LD 1:158-160.)

2          Petitioner timely appealed to the California Court of Appeals, Fifth Appellate District

3   (hereinafter "Fifth DCA"). The Fifth DCA remanded the case to the sentencing court to correct a

4   clerical error found on the abstract of judgment. (LD 3: 5-7.) On December 8, 2006, the Fifth DCA

5   affirmed the judgment in a reasoned opinion. (LD 4.) Petitioner then filed a petition for review in the

6   California Supreme Court.  On February 14, 2007, the California Supreme Court granted the petition

7   pending further order. On September 12, 2007, the California Supreme Court then dismissed the

8   petition and remanded the case to the appellate court in light of People v. Black, 35 Cal.4th 1238

9   (2005). (LD 5.) On November 1, 2007, Petitioner filed a Petition for Writ of Certiorari in the United

10  States Supreme Court, but the petition was denied on February 19, 2008. (LD 6.)

11         On February 9, 2009, Petitioner filed the instant federal habeas petition.  Petitioner raises the

12  following grounds for relief: 1) There was insufficient evidence to support the gang enhancement; 2)

13  The conviction for participating in a criminal street gang should have been stayed pursuant to Cal.

14  Penal Code § 654; and 3) The trial court violated Petitioner's constitutional rights in sentencing him

15  to an upper term. Respondent filed an answer to the petition on July 6, 2009. Petitioner filed a

16  traverse on October 30, 2009.

17                                  **FACTUAL BACKGROUND**[2]

18         In the early morning of November 17, 2004, Uriel Viramontes was walking from his
    home to the home of his employer. As he passed through Columbia Park, Viramontes saw a
19  man on a bicycle and a man on foot. Viramontes did not know either man. Viramontes heard
    the man on the bicycle, Gomez, ask the man on foot whether the man knew Viramontes.
20  Gomez then got off his bike and rushed Viramontes.

21         Gomez asked Viramontes who he was, where he lived, and "what [he] claimed."
    Viramontes told Gomez that he was not affiliated with any gang. Gomez then demanded that
22  Viramontes hand over all his possessions. When Viramontes turned to look at the other
    person, Gomez struck Viramontes in the face. The blow hit Viramontes in the left eye,
23  causing the area to bleed.

24         Viramontes fell to the ground, landing on his back. As Viramontes attempted to get
    up, he was told by Gomez he would stab Viramontes if he stood up. Before Viramontes could
25  get up, Gomez sat on him and took a wallet and cellular phone from Viramontes. The wallet
    contained Viramontes's green card, Social Security card, and automatic teller machine card.

26

27  ─────────────

28         [2]The factual background is taken from the opinion of the state appellate court and is presumed correct. 28
    U.S.C. § 2254(e)(1).

U.S. District Court

E. D. California                                              2

1    While Viramontes was still lying on the ground, Gomez walked back to his bicycle.
2    Viramontes waited until Gomez was a safe distance away and then ran for his employer's
     house. As he ran away, Viramontes heard Gomez yell, "Yeah, you better run, you little bitch,
     puto Norte." The term "puto" means "sissy" or "homosexual" in Spanish. Viramontes
3    understood "Norte" to be a gang reference.

4    (LD 4:2.)

5                                    **DISCUSSION**

6    **I. Jurisdiction**

7          Relief by way of a petition for writ of habeas corpus extends to a person in custody pursuant

8    to the judgment of a state court if the custody is in violation of the Constitution or laws or treaties of

9    the United States.  28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); <u>Williams v. Taylor</u>, 529 U.S. 362,

10   375 fn.7 (2000).  Petitioner asserts that he suffered violations of his rights as guaranteed by the U.S.

11   Constitution.  In addition, the conviction challenged arises out of the Stanislaus County Superior

12   Court, which is located within the jurisdiction of this court.  28 U.S.C. § 2254(a); 2241(d).

13   Accordingly, the Court has jurisdiction over the action.

14         On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of

15   1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment.

16   <u>Lindh v. Murphy</u>, 521 U.S. 320 (1997), *cert. denied,* 522 U.S. 1008 (1997); <u>Jeffries v. Wood</u>, 114

17   F.3d 1484, 1499 (9th Cir. 1997), *quoting* <u>Drinkard v. Johnson</u>, 97 F.3d 751, 769 (5th Cir.1996), *cert.*

18   *denied,* 520 U.S. 1107 (1997), *overruled on other grounds by* <u>Lindh v. Murphy</u>, 521 U.S. 320 (1997)

19   (holding AEDPA only applicable to cases filed after statute's enactment).  The instant petition was

20   filed after the enactment of the AEDPA; thus, it is governed by its provisions.

21   **II. Legal Standard of Review**

22         This Court may entertain a petition for writ of habeas corpus "in behalf of a person in custody

23   pursuant to the judgment of a State court only on the ground that he is in custody in violation of the

24   Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).

25         The instant petition is reviewed under the provisions of the Antiterrorism and Effective Death

26   Penalty Act which became effective on April 24, 1996.  <u>Lockyer v. Andrade</u>,  538 U.S. 63, 70

27   (2003).  Under the AEDPA, an application for habeas corpus will not be granted unless the

28   adjudication of the claim "resulted in a decision that was contrary to, or involved an unreasonable

1  application of, clearly established Federal law, as determined by the Supreme Court of the United

2  States" or "resulted in a decision that was based on an unreasonable determination of the facts in

3  light of the evidence presented in the State Court proceeding." 28 U.S.C. § 2254(d); see Lockyer,

4  538 U.S. at 70-71; see Williams, 529 U.S. at 413.

5      As a threshold matter, this Court must "first decide what constitutes 'clearly established

6  Federal law, as determined by the Supreme Court of the United States.'" Lockyer, 538 U.S. at 71,

7  quoting 28 U.S.C. § 2254(d)(1).  In ascertaining what is "clearly established Federal law," this Court

8  must look to the "holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time

9  of the relevant state-court decision." Id., quoting Williams, 592 U.S. at 412. "In other words, 'clearly

10  established Federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by

11  the Supreme Court at the time the state court renders its decision." Id.

12      Finally, this Court must consider whether the state court's decision was "contrary to, or

13  involved an unreasonable application of, clearly established Federal law." Lockyer, 538 U.S. at 72,

14  quoting 28 U.S.C. § 2254(d)(1). "Under the 'contrary to' clause, a federal habeas court may grant the

15  writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a

16  question of law or if the state court decides a case differently than [the] Court has on a set of

17  materially indistinguishable facts."  Williams, 529 U.S. at 413; see also Lockyer, 538 U.S. at 72.

18  "Under the 'reasonable application clause,' a federal habeas court may grant the writ if the state

19  court identifies the correct governing legal principle from [the] Court's decisions but unreasonably

20  applies that principle to the facts of the prisoner's case."  Williams, 529 U.S. at 413.

21      "[A] federal court may not issue the writ simply because the court concludes in its

22  independent judgment that the relevant state court decision applied clearly established federal law

23  erroneously or incorrectly.  Rather, that application must also be unreasonable."  Id. at 411.  A

24  federal habeas court making the "unreasonable application" inquiry should ask whether the state

25  court's application of clearly established federal law was "objectively unreasonable."  Id. at 409.

26      Petitioner has the burden of establishing that the decision of the state court is contrary to or

27  involved an unreasonable application of United States Supreme Court precedent. Baylor v. Estelle,

28  94 F.3d 1321, 1325 (9th Cir. 1996).  Although only Supreme Court law is binding on the states,

1    Ninth Circuit precedent remains relevant persuasive authority in determining whether a state court

2    decision is objectively unreasonable.  See Duhaime v. Ducharme, 200 F.3d 597, 600-01 (9th

3    Cir.1999).

4        AEDPA requires that we give considerable deference to state court decisions. The state

5    court's factual findings are presumed correct, 28 U.S.C. § 2254(e)(1), and we are bound by a state's

6    interpretation of its own laws. Souch v. Schaivo, 289 F.3d 616, 621 (9th Cir.2002), cert. denied, 537

7    U.S. 859 (2002), rehearing denied, 537 U.S. 1149 (2003).

8    **III.  Review of Petition**

9        **A.  Ground One**

10       In his first claim, Petitioner alleges there was insufficient evidence to support the gang

11   enhancement. He contends there was evidence to show he belonged to the "Varrio West Side

12   Turlock" gang, but the evidence did not establish that this gang was a criminal street gang as defined

13   by statute.

14       This claim was presented on direct appeal to the Fifth DCA, where it was rejected in a

15   reasoned opinion. (LD 4:3-6.) Petitioner then presented the claim to the California Supreme Court

16   where it was summarily denied. (LD 5.) The California Supreme Court, by its "silent order" denying

17   review of the Fifth DCA's decision, is presumed to have denied the claim presented for the same

18   reasons stated in the opinion of the Fifth DCA.  Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991).

19       The Fifth DCA rejected the claim as follows:

20           The role of an appellate court in reviewing the sufficiency of the evidence is limited.
     The court must """"review the whole record in the light most favorable to the judgment below
21   to determine whether it discloses substantial evidence-that is, evidence which is reasonable,
     credible, and of solid value-such that a reasonable trier of fact could find the defendant guilty
22   beyond a reasonable doubt." [Citations.] [¶] ... But it is the jury, not the appellate court,
     which must be convinced of the defendant's guilt beyond a reasonable doubt.'" (People v.
23   Sanchez (1998) 62 Cal.App.4th 460, 468, quoting People v. Ceja (1993) 4 Cal.4th 1134,
     1138-1139.)

24
             We """"presume in support of the judgment the existence of every fact the trier could
25   reasonably deduce from the evidence."' [Citation.]" (People v. Davis (1995) 10 Cal.4th 463,
     509; In re Manuel G. (1997) 16 Cal.4th 805, 822.) We do not reweigh the evidence, resolve
26   conflicts in the evidence, or reevaluate the credibility of witnesses. (People v. Ochoa (1993) 6
     Cal.4th 1199, 1206; People v. Green (1997) 51 Cal.App.4th 1433, 1437.) "Before a judgment
27   of conviction can be set aside for insufficiency of the evidence to support the trier of fact's
     verdict, it must clearly appear that upon no hypothesis whatever is there sufficient evidence
28   to support it. [Citation.]" (People v. Rehmeyer (1993) 19 Cal.App.4th 1758, 1765.)

Gomez acknowledges that the evidence established he belonged to an unspecified Norteno gang, but contends the evidence had to establish that the specific subgroup of which he claimed to be a member, the Varrio West Side Turlock gang, was a criminal street gang. He also argues the evidence failed to establish that the Varrio West Side Turlock gang had a common membership consisting of three or more persons. Gomez's contention is premised on the theory that each Norteno affiliated subgroup should be treated as a separate criminal street gang for purposes of section 186.22. We reject this premise.

At trial expert testimony established that the Norteno gang uses the number "14," the letter "n," specific hand signs, and the color red to identify itself. The Norteno gang has claimed Columbia Park in Turlock as its "territory." In 2004 there were over 100 Norteno gang members in Turlock, whose primary crime-related activities consisted of assaults, drug deals, robberies, burglaries, drive-by shootings, and murders. Turlock Police Officer Steve Crawford, testifying as an expert on gangs, stated that Gomez was an active participant in the Norteno gang and a high-ranking member of that gang.

During his investigation of the Viramontes robbery, Crawford learned of a telephone call made by a jail inmate, Anthony Narcisco, asking someone to send a gang member named "Soldier" to intimidate a witness in his case. In a subsequent phone call, Narcisco learned that Soldier had "paid a visit" to the witness and had been arrested. Gomez's gang moniker is "Soldier" and no other gang member in Turlock uses that moniker.

Sureno and Norteno gang members are housed separately in the Stanislaus County Jail. In April 2005, Gomez was housed in the section reserved for the most notorious Norteno gang members. Gang members commonly have tattoos of their last name and gang identification. Gomez has a tattoo with an "I" and four dots, representing the number 14. He also has tattoos of his last name, the moniker "Soldier," and "T-14." The "T" stands for "Turlock" and the number 14 denotes the Nortenos.

Crawford testified that Gomez was aware of the Norteno gang's criminal activity because he participated in those activities. In 2000 Gomez was convicted of felony possession of narcotics for sale. Gomez also had knowledge of the criminal activities of other gang members, as evidenced by the written record of crimes committed by fellow gang members that was found in Gomez's cell on April 21, 2005.

The robbery of Viramontes benefited the Norteno gang because the victim's driver's license was found not in the possession of Gomez but another Norteno gang member. The robbery also served to intimidate residents of the Columbia Park area and strengthen the gang's control over that neighborhood.

The California Supreme Court has acknowledged that the Nortenos are a large criminal street gang, with numerous subgroups. (*People ex rel. Gallo v. Acuna* (1997) 14 Cal.4th 1090, 1121.) The evidence established that Gomez was part of the larger Norteno gang, regardless of whether he also claimed affiliation to one particular Norteno subgroup. (*In re Jose P.* (2003) 106 Cal.App.4th 458, 467-468.) As set forth in *Jose P.*, the evidence of gang activity satisfying the requirements of section 186.22 need not be specific to a particular subgroup of a criminal street gang, but may be established by evidence of gang-related criminal activity by members of any of the affiliated subgroups. (*Jose P.*, at pp. 467-468.)

It is apparent that Gomez was acting as part of the larger Norteno gang when he robbed and assaulted Viramontes. The evidence was sufficient to support the section 186.22, subdivision (a) conviction and the section 186.22, subdivision (b)(1) true finding.

(LD 4: 3-6.)

1    In reviewing insufficiency of evidence claims, California courts expressly follow the <u>Jackson</u>

2 standard enunciated in <u>Jackson v. Virginia</u>, 443 U.S. 307 (1979).  <u>See</u> <u>People v. Johnson</u>, 26 Cal.3d

3 557, 575-578 (1980); <u>see also</u> <u>People v. Thomas</u>, 2 Cal.4th 489, 513 (1992).  Pursuant to the

4 Supreme Court's holding in <u>Jackson</u>, the test in determining whether a factual finding is fairly

5 supported by the record is as follows:

6      "[W]hether, after viewing the evidence in the light most favorable to the
       prosecution, any rational trier of fact could have found the essential elements
7      of the crime beyond a reasonable doubt."

8 <u>Jackson</u>, 443 U.S. at 319; <u>see also</u> <u>Lewis v. Jeffers</u>, 497 U.S. 764, 781 (1990).

9    This Court must presume the correctness of the state court's factual findings. 28 U.S.C.

10 § 2254(e)(1); <u>Kuhlmann v. Wilson</u>, 477 U.S. 436, 459 (1986).  This presumption of correctness

11 applies to state appellate determinations of fact as well as those of the state trial courts.  <u>Tinsley v.</u>

12 <u>Borg</u>, 895 F.2d 520, 525 (9th Cir.1990).  Although the presumption of correctness does not apply to

13 state court determinations of legal questions or mixed questions of law and fact, the facts as found by

14 the state court underlying those determinations are entitled to the presumption.  <u>Sumner v. Mata</u>, 455

15 U.S. 539, 597 (1981).

16    In this case, it was undisputed that Petitioner belonged to a gang. Petitioner also

17 acknowledged there was evidence he belonged to an unspecified Norteno gang. There was

18 substantial evidence introduced at trial that the Norteno gang was a prominent criminal street gang.

19 Thus, there was ample evidence to conclude Petitioner belonged to a criminal street gang. There was

20 also evidence from which the trier of fact could conclude that Petitioner committed the crime for the

21 benefit of the Norteno gang. The victim's drivers license was found in the possession of another

22 Norteno gang member. Also, Petitioner's actions served to intimidate other residents of the

23 neighborhood and heighten the gang's notoriety. Accordingly, the state court rejection of Petitioner's

24 claim was not an unreasonable application of <u>Jackson</u> and the claim should be denied.

25    **B.  Ground Two**

26    In his second claim, Petitioner argues the trial court should have stayed the term imposed for

27 participating in a criminal street gang pursuant to Cal. Penal Code § 654.

28    This claim was also presented and rejected on direct appeal to the Fifth DCA. (LD 4:6-7.)

1    Petitioner then presented the claim to the California Supreme Court where it was summarily denied.

2    (LD 5.) The California Supreme Court, by its "silent order" denying review of the Fifth DCA's

3    decision, is presumed to have denied the claim presented for the same reasons stated in the opinion

4    of the Fifth DCA.  <u>Ylst v. Nunnemaker</u>, 501 U.S. 797, 803 (1991).

5         Respondent correctly argues that this ground does not present a cognizable federal claim for

6    relief.  The basic scope of habeas corpus is prescribed by statute.  Subsection (c) of Section 2241 of

7    Title 28 of the United States Code provides that habeas corpus shall not extend to a prisoner unless

8    he is "in custody in violation of the Constitution."  28 U.S.C. § 2254(a) states:

9         The Supreme Court, a Justice thereof, a circuit judge, or a district court shall
          entertain an application for a writ of habeas corpus in behalf of a person in
10        custody pursuant to a judgment of a State court *only on the ground that he is in
          custody in violation of the Constitution or laws or treaties of the United States.*
11

12   (emphasis added).  <u>See also</u>, Rule 1 to the Rules Governing Section 2254 Cases in the United States

     District Court.  The Supreme Court has held that "the essence of habeas corpus is an attack by a
13
     person in custody upon the legality of that custody . . ." <u>Preiser v. Rodriguez</u>, 411 U.S. 475, 484
14
     (1973).
15
          Furthermore, in order to succeed in a petition pursuant to 28 U.S.C. § 2254, Petitioner must
16
     demonstrate that the adjudication of his claim in state court
17
          resulted in a decision that was contrary to, or involved an unreasonable application
18        of, clearly established Federal law, as determined by the Supreme Court of the
          United States; or resulted in a decision that was based on an unreasonable
19        determination of the facts in light of the evidence presented in the State court
          proceeding.
20
     28 U.S.C. § 2254(d)(1),(2).
21
          Here, Petitioner fails to establish a violation of the Constitution or federal law. The instant
22
     claim is based entirely on the interpretation and application of state law, and generally, issues of state
23
     law are not cognizable on federal habeas. <u>Estelle v. McGuire</u>, 502 U.S. 62, 67, (1991) ("We have
24
     stated many times that 'federal habeas corpus relief does not lie for errors of state law.' "), *quoting*
25
     <u>Lewis v. Jeffers</u>, 497 U.S. 764, 780 (1990); <u>Gilmore v. Taylor</u>, 508 U.S. 333, 348-49 (1993)
26
     (O'Connor, J., concurring) ("mere error of state law, one that does not rise to the level of a
27
     constitutional violation, may not be corrected on federal habeas").  Federal courts are bound by state
28

1  court rulings on questions of state law. Oxborrow v. Eikenberry, 877 F.2d 1395, 1399 (9th Cir.),

2  *cert. denied*, 493 U.S. 942 (1989).

3  Furthermore, Federal courts must defer to the state courts' interpretation of state sentencing

4  laws. Estelle v. McGuire, 502 U.S. 62, 67-68 (1991); Bueno v. Hallahan, 988 F.2d 86, 88 (9th Cir.

5  1993). Absent a showing of fundamental unfairness, a state court's application or misapplication of

6  its own sentencing laws does not generally justify federal habeas relief. Christian v. Rhode, 41 F.3d

7  461, 469 (9th Cir. 1994).

8  In rejecting this claim, the Fifth DCA determined that Petitioner's sentence was proper under

9  state law, as follows:

10  At sentencing Gomez argued that concurrent terms should be imposed for the two
   substantive offenses of robbery and participating in a criminal street gang. The People
11  agreed, stating that "active participation ... is 654 to the gang enhancement." The trial court
   ordered that the terms imposed for counts 1 and 2 run concurrently.

12

13  Gomez argues on appeal that the term imposed for the offense of participating in a
   criminal street gang should have been stayed pursuant to section 654 because the term
   imposed on the robbery conviction was enhanced by the section 186.22, subdivision (b)(1)
14  true finding.

15  There is a split of authority within the Courts of Appeal as to whether section 654
   applies to any enhancements. The California Supreme Court to date has not resolved the
16  issue. ( *People v. Oates* (2004) 32 Cal.4th 1048, 1066, fn. 7; *People v. King* (1993) 5 Cal.4th
   59, 78.) The issue is pending before that court in *People v. Palacios,* review granted May 11,
17  2005, S132144.

18  Section 654 prohibits multiple punishment for an indivisible course of conduct, even
   though it violates more than one statute. (*People v. Hicks* (1993) 6 Cal.4th 784, 789.)
19  Multiple punishments may be imposed, however, where the defendant commits two crimes in
   pursuit of two independent, even if simultaneous, objectives. (*People v. Herrera* (1999) 70
20  Cal.App.4th 1456, 1466.)

21  The substantive offense of robbery requires an intent to steal and permanently to
   deprive the owner of property. (*People v. Kipp* (2001) 26 Cal.4th 1100, 1128.) Even though
22  the robbery was committed for the benefit of a criminal street gang within the meaning of
   section 186.22, subdivision (b)(1), the section 186.22, subdivision (a) offense requires a
23  separate intent and objective from the underlying felony committed on behalf of a gang. (*In
   re Jose P., supra,* 106 Cal.App.4th at p. 471.)

24

25  Section 186.22, subdivision (a) is a "substantive offense whose gravamen is the
   *participation in the gang itself.*" (*In re Jose P., supra,* 106 Cal.App.4th at pp. 470-471.) This
26  substantive offense punishes active gang participation where the defendant promotes or
   assists in felonious criminal conduct. The defendant must have the intent and objective to
27  participate actively in a criminal street gang. (*People v. Herrera, supra,* 70 Cal.App.4th at p.
   1467.)

28  In *People v. Herrera, supra,* 70 Cal.App.4th 1456, the trial court imposed a sentence

for attempted murder, enhanced by a true finding under section 186.22, subdivision (b)(1), and also imposed a term for the section 186.22, subdivision (a) substantive offense. (*Herrera,* at p. 1462.) The appellate court struck the enhancement for the sole reason that it does not apply where the crime is punishable by life in prison. (*Id.* at p. 1465; § 186.22, subd. (b)(4).)

In *People v. Burnell* (2005) 132 Cal.App.4th 938, the appellate court addressed whether robbery was a necessarily included offense of section 186.22, subdivision (a). (*Burnell,* at pp. 944-946.) That court concluded that robbery was "not necessarily included in the offense of street terrorism under either the statutory test or the pleadings test." (*Id.* at p. 946.)

Section 186.22, subdivision (a) "requires a separate intent and objective from the underlying felony committed on behalf of the gang ." (*People v. Herrera, supra,* 70 Cal.App.4th at p. 1468.) As such, section 654 does not preclude the imposition of punishment for both the robbery conviction and the section 186.22, subdivision (a) substantive offense. (*Herrera,* at p. 1468.)

(LD 4:6-7.)

Given the analysis of the appellate court, Petitioner fails to establish fundamental unfairness by the sentencing court in imposing separate terms for the robbery committed for benefit of a criminal street gang and for the active participation in a criminal street gang. Since Petitioner's claim does not rise to a constitutional violation, it should be denied.

### C.  Ground Three

In his third and final claim, Petitioner alleges the sentencing court selected the upper term on the robbery conviction in violation of the Supreme Court's holding in Apprendi v. New Jersey, 530 U.S. 466 (2000).

This claim was also presented and rejected on direct appeal to the Fifth DCA. (LD 4:6-7.) Petitioner then presented the claim to the California Supreme Court where it was summarily denied. (LD 5.) The California Supreme Court, by its "silent order" denying review of the Fifth DCA's decision, is presumed to have denied the claim presented for the same reasons stated in the opinion of the Fifth DCA.  Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991).

The Federal Constitution's jury-trial guarantee assigns the determination of certain facts to the jury's exclusive province. Under that guarantee, the Supreme Court held in Apprendi, "any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." 530 U.S. at 490. In Blakely v. Washington, 542 U.S. 296, 304-05 (2004), the Supreme Court held that facts allowing a sentence exceeding the "standard"

range in Washington's sentencing system must also be found by a jury. In <u>United States v. Booker</u>, 543 U.S. 220, 244 (2005), the Supreme Court determined that facts prompting an elevated sentence under then-mandatory Federal Sentencing Guidelines must also be submitted to a jury. Recently, in <u>Cunningham v. California</u>, 549 U.S. 270 (2007), the Supreme Court applied <u>Apprendi's</u> rule to facts permitting imposition of an "upper term" sentence under California's determinate sentencing law. The Court found determined the "middle term" of California's three-tier sentencing scheme to be the "statutory maximum" under <u>Apprendi</u> and <u>Blakely</u>. <u>Id.</u> at 289-91. Any aggravating factor subjecting Petitioner to the "upper term" must be found by the jury.

In this case, Petitioner was sentenced to the upper term for his robbery conviction. The trial court stated, "And if I were to prioritize them, probably the fact you were on parole when this happened I guess would be the most aggravating in my mind." (LD 2: 270.) In <u>Butler v. Curry</u>, 528 F.3d 624, 645-646 (9th Cir.2008), the Ninth Circuit held that a defendant's probation status does not come within <u>Apprendi's</u> narrow "prior conviction" exception and must be submitted to the jury and proven beyond a reasonable doubt. Nevertheless, the <u>Butler</u> holding is not clearly established federal law as determined by the Supreme Court for purposes of AEDPA. <u>Kessee v. Mendoza-Powers</u>, 574 F.3d 675 (9th Cir.2009). In <u>Kessee</u>, the Ninth Circuit acknowledged that the holding in <u>Butler</u> conflicted with several other circuit courts of appeal. Therefore, the state court's interpretation of <u>Apprendi</u> in this case in finding Petitioner's parole status to be an aggravating factor as an exception to <u>Apprendi's</u> holding is not a violation of AEDPA. The claim is therefore without merit.

Even if the Court were to determine that sentencing error occurred, the imposition of the upper term was harmless error. <u>See</u> <u>Washington v. Recuenco</u>, 548 U.S. 212, 221-222 (2006) (Finding that failing to submit a sentencing factor to the jury is not structural error, but subject to a harmless error analysis). Under <u>Brecht v. Abrahamson</u>, 507 U.S. 619, 623 (1993), this Court must determine whether the error in this case had a "substantial and injurious effect" on the sentence. Relief can only be granted if this Court is in "grave doubt" as to whether the jury would have found the aggravating factor beyond a reasonable doubt. <u>O'Neal v. McAninch</u>, 513 U.S. 432, 436 (1995).

Here, there is no question the jury would have found Petitioner was on parole at the time he committed the offense. As noted by Respondent, after reviewing the probation report the trial court

1   found Petitioner was on probation and parole at the time he committed the instant offense.

2   Petitioner's extensive criminal history was presented, which included two convictions for taking a

3   vehicle, one for resisting arrest, three for burglary, and one for possession for sale of

4   methamphetamine. (LD 1: 152.) In addition, the probation report noted that Petitioner violated his

5   parole on May 28, 2003, and December 12, 2003, and was returned to prison on both occasions. (LD

6   1: 152.) The probation report noted that Petitioner was on probation and parole on November 17,

7   2004, when he committed this offense. (LD 1: 152, 155.) The records of the Department of

8   Corrections submitted to the trial court also confirmed that Petitioner was on parole at the time the

9   instant offense occurred. (LD 1: 98.) In light of the evidence presented to the trial court, there is no

10  doubt the jury would have determined Petitioner was on parole and probation at the time he

11  committed the instant offense. Any potential error was therefore harmless.

12          As noted by Respondent, only one valid aggravating factor is necessary for the imposition of

13  an upper term in California. Butler, 528 F.3d at 641-43.  Therefore, a sentencing error under

14  Apprendi with respect to an aggravating factor which is deemed harmless will not merit habeas

15  relief. Butler, 528 F.3d at 648. Accordingly, Petitioner is not entitled to habeas relief.

16  ///

17  ///

18  ///

19  ///

20  ///

21  ///

22  ///

23  ///

24  ///

25  ///

26  ///

27  ///

28  ///

U.S. District Court
E. D. California

1

**RECOMMENDATION**

2        Accordingly, IT IS HEREBY RECOMMENDED that the petition for a writ of habeas corpus

3  be DENIED WITH PREJUDICE. It is FURTHER RECOMMENDED that the Clerk of Court be

4  DIRECTED to enter judgment.

5        This Findings and Recommendation is submitted to the assigned District Judge, pursuant to

6  the provisions of Title 28 U.S.C. § 636(b)(1).  Within thirty days after being served with the

7  Findings and Recommendation, any party may file written objections with the Court and serve a

8  copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's

9  Findings and Recommendation."  Any reply to the objections shall be served and filed within ten

10  days after service of the objections.  The parties are advised that failure to file objections within the

11  specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d

12  1153 (9th Cir. 1991).

13

14  IT IS SO ORDERED.

15  **Dated:   December 17, 2009**          **/s/ Sandra M. Snyder**

16                                    UNITED STATES MAGISTRATE JUDGE

17

18

19

20

21

22

23

24

25

26

27

28